**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff*,
HAROLD J. GREEN

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD J. GREEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHOBANI, INC., formerly known as AGRO-FARMA, INC.,<br><br>Defendant. | Case No.: **'13CV2106 DMS DHB**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

## I.     INTRODUCTION

1. Plaintiff, Harold J. Green (hereinafter "Mr. Green" or "Plaintiff"), through his undersigned attorneys, brings this class action complaint against Defendant Chobani, Inc., formerly known as Agro-Farms, Inc., (hereinafter, "Chobani" or "Defendant") due to the negligent manufacturing and distribution of mold-tainted Greek yogurt, and in breach of the implied warranty of merchantability for its Greek yogurt. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys. Plaintiff brings this action on behalf of a national class and sub-class of California consumers who, within the last year, purchased and/or consumed recalled Chobani Greek Yogurt which contained a harmful strain of mold that has caused numerous customers and consumers of Chobani to fall sick and ill after consumption and to lose money as a result of the recalled product. Affected product has a manufacturing code of "16-012" and a "best by" date between September 11, 2013 and October 7, 2013.

2. Chobani is a corporation registered in the State of New York. Chobani's business consists of the manufacturing and distribution of "Greek yogurt," sales of which are made both domestically and internationally.

3. Chobani has been known in the past as Agro-Farma, Inc. Agro-Farma, Inc. changed its name to Chobani in January 2012. According to Business Week, Chobani holds the largest share of the overall U.S. yogurt market with 17 percent, more than double its closest competitor, Yoplait. Chobani also enjoys maintaining a hold on 50% of the Greek yogurt market.

4. Chobani expected gross sales to reach $1 billion in 2012.

5. Chobani markets itself as a producer of natural Greek yogurt. On its website, it states: "Chobani contains only natural ingredients so it's a

**CLASS ACTION COMPLAINT**                                                      PAGE 1 OF 14

naturally good for you indulgence. Chobani has two times more protein per serving than regular yogurt. Plus, our authentic straining process results in a rich and creamy yogurt, so it's a good-for-you-way to satisfy your cravings."

6. Consumers of Chobani are typically those that live a healthy lifestyle and tend to consume a healthier diet than the average consumer due to Chobani's claims of providing a completely natural and healthy form of Greek Yogurt (i.e. no sugar or artificial preservatives).

7. Chobani's website, www.Chobani.com, promotes health and wellness to its consumers throughout the website's various pages.

## II.   BACKGROUND INFORMATION

8. On September 5, 2013, after receiving numerous complaints from its customers regarding customers falling sick after eating various flavors of Chobani Greek Yogurt, Chobani issued a formal recall of its Greek yogurt product with manufacturing code "16-012" and a "best by" date between 9/11/2013 and 10/7/2013 (hereinafter the "Yogurt").

9. On September 5, 2013, the U.S. Food and Drug Administration issued the following statement regarding Chobani's recall:

> The company has ceased the distribution of the product due to reports of product bloating and swelling and some claims of illness as the company continues its investigation to identify the root cause. The potentially affected product was distributed nationwide from its Twin Falls, Idaho facility and was delivered to consumers through retail and club stores.

10. On September 5, 2013, an unidentified spokesman for Chobani stated:

> We [Chobani] won't sugar coat it --- this type of mold is not pleasant. While unlikely to have ill health effects upon consumption, nothing is more important to us than the health and safety of our consumers, and we are taking

        all of the necessary steps to uphold our very rigid quality standard.

11. To date, Chobani has not publically identified the actual strain of mold found within the Yogurt subject to the recall. All that has been provided by Chobani regarding the specific type of mold is a general statement from Chobani's founder and company CEO Hamdi Ulukaya, who stated that, "While this type of mold is common in the dairy environment, particularly when using only natural ingredients that are absent of artificial preservatives, it's still unacceptable to me and all of our yogurt makers."

12. This vague and generalized statement does nothing to alleviate the concerns of thousands of customers who potentially could get sick, and many whom already have, as a result of consuming the Yogurt that contained a harmful or potentially harmful strain of mold.

13. According to the U.S. Department of Agriculture, "some molds cause allergic reactions and respiratory problems. And a few molds, in the right conditions, produce "mycotoxins, poisonous substances that can make you sick."

14. Potentially hundreds, or even thousands, of Chobani consumers are now left in the dark with information that is extremely relevant to the health and safety of not only themselves, but friends, family members, and even children, whom have all consumed mold tainted cups of Yogurt. Such information is relevant to Plaintiff and the putative class members who may need to know the type of mold they ingested in order to notify their respective treating physicians.

15. On or about September 5, 2013, Chobani's CEO, Mr. Ulukaya, told the Associated Press: "everybody in the company took this hard. It shook us up."

16. As a result of Chobani manufacturing and distributing moldy Yogurt

without taking the proper precautions, Defendant placed in the stream of commerce product that is unusable, unsafe, and has caused purchasers and consumers of Yogurt to suffer or potentially suffer illness, as well as the loss of monies.

### III. JURISDICTION AND VENUE

17. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 (d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) the named Plaintiff has a different citizenship from that of Defendant; and (3) the claims of the Plaintiff and proposed class members exceed $5,000,000 in the aggregate.

18. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and the Plaintiff and Defendant are citizens of different states.

19. The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to do business in California, has sufficient minimum contacts with California, and otherwise intentionally avails itself of the markets in California and the United States through the promotion, marketing and sale of consumer goods, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

20. Because a substantial part of the events or omissions giving rise to these claims occurred in this District, and since the Court has personal jurisdiction over Defendant, venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(a) and (b).

///

///

## IV. PARTIES

21. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

22. Plaintiff is informed and believes, and thereon alleges, that Defendant is, and at all times mentioned herein was, a corporation whose primary corporate address is in New York, California, and incorporated under the laws of New York. Defendant, is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39). Defendant is the top producer of consumer/retail Greek yogurt products. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and within this judicial district.

## V. FACTUAL ALLEGATIONS

23. On August 12, 2013, Plaintiff purchased four (4) cups of Yogurt from the grocery store chain, Albertsons, at a cost of $1.39 per cup.

24. On August 16, 2013, Plaintiff purchased four (4) cups of Yogurt from the grocery store chain, Albertsons, Albertsons, at a cost of $1.39 per cup.

25. On August 19, 2013, Plaintiff purchased five (5) cups of Yogurt from the grocery store chain, Albertsons, Albertsons, at a cost of $1.39 per cup.

26. On August 26, 2013 Plaintiff purchased two (2) cups of Yogurt from the grocery store chain, Albertsons, Albertsons, at a cost of $1.39 per cup.

27. On September 4, 2013 Plaintiff purchased six (6) cups of Yogurt from the grocery store chain, Albertsons, Albertsons, at a cost of $1.00 per cup.

28. Plaintiff purchased all of the subject Yogurt from the grocery store chain Albertsons located at 1800 W. Whittier Boulevard, La Habra, California 90631.

29. Plaintiff purchased approximately, at a minimum, sixteen (16) cups of Yogurt since August 12, 2013.

30. Before purchasing Plaintiff saw and relied upon, among other things, the product packaging and related advertising of the Chobani Greek Yogurt.

31. Had Plaintiff known that the Chobani Yogurts he purchased was defective and inconsumable, Plaintiff would not have purchased the product.

32. Subsequently, but prior to September 5, 2013, Plaintiff and all members of his household (Plaintiff, his wife, and his two daughters) consumed the Yogurt.

33. At all times, Plaintiff, like all class members, consumed the Chobani Yogurt in a foreseeable manner, pursuant to instructions, and in the manner in which it was intended to be consumed.

34. On September 5, 2013, upon notification of the recall instituted by Chobani, Plaintiff returned approximately six (6) containers of Yogurt to the above-referenced Albertsons grocery store.

## VI. CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated (the "Class").

36. Plaintiff represents and is a member of the Class, defined as:

> All persons within the United States who purchased Chobani Greek Yogurt from Defendant with manufacturing code "16-012" and a "Best By" date between September 11, 2013 and October 7, 2013, since one year prior to the filing of this Complaint.

37. Plaintiff also brings this action on behalf of himself and on behalf of California sub-class (""Sub-Class").

38. Plaintiff represents and is a member of the Sub-Class, defined as:

> All persons within the State of California who purchased Chobani Greek Yogurt from Defendant with manufacturing code "16-012" and a "Best By" date

between September 11, 2013 and October 7, 2013, since one year prior to the filing of this Complaint.

39. Defendant, and its employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the Class and Sub-Class members number in the several thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

40. This suit seeks only damages and equitable relief for recovery of economic injury on behalf of the Class and Sub-Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to modify or expand the definition of the Class and Sub-Class to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

41. Plaintiff and members of the Class and Sub-Class were harmed by the acts of Defendant in at least the following ways: Defendant, due to the negligent manufacturing of its Greek yogurt, manufactured and distributed to the public products which left Defendant's manufacturing facilities containing a defect that poses a health threat to the public. That defect is a stain of mold that the Defendant has acknowledged has been discovered, but which Defendant refuses to disclose to the public. The presence of a harmful or potentially harmful strain of mold its yogurt is a direct result of the failure of Chobani to manufacture its Greek yogurt within the industry standards. As a result of Chobani's actions, Plaintiff and members of the Class and Sub-Class were harmed financially and physically, and suffered damages as a result. Plaintiff and members of the Class and Sub-Class have therefore been subjected to substantially the same wrongdoing as all other class members. Plaintiff and members of the Class and Sub-Class have sustained similar monetary damages due to the purchase of the defective, moldy and

unsafe Yogurt.

42. The joinder of the Class and Sub-Class members is impractical and the disposition of their claims in this Class action will provide substantial benefits both to the parties and to the Court. The Class and Sub-Class can be identified through Defendants' records and/or Defendants' agent's records and by public notice.

43. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class and Sub-Class predominate over questions which may affect individual Class and Sub-Class members, including, but not limited to, the following:

   a. Whether Defendant was negligent in the design, manufacturing, and/or distribution of its Yogurt;
   b. Whether Defendant breached any warranties (such as the implied warranty of merchantability) in selling its Yogurt to Plaintiff and the public at large; and
   c. Whether Plaintiff, the Class and Sub-Class members were damaged thereby, and the extent of damages for such violations.

44. As a person who purchased and consumed the Yogurt, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class or Sub-Class.

45. Plaintiff has no interests antagonistic to the Class and Sub-Class and is subject to no unique defenses.

46. Plaintiff will fairly and adequately protect the interests of the Class and Sub-Class.

47. Plaintiff has retained counsel experienced in handling class action claims and claims involving consumer litigation.

48. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of Class and Sub-Class members in individually controlling the prosecution of separate claims against Defendant is small because the cost to purchase a cup of Chobani Greek Yogurt is minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, as the Class action concerns a product voluntarily recalled by Defendant with a specific manufacturing code and "best by" date.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY FOR FOOD

49. Plaintiff hereby re-alleges and incorporates the above allegations by reference as if set fully herein.

50. Plaintiff brings this cause of action on behalf of himself and on behalf of the Class. Plaintiff and the Class members have suffered injury in fact and lost money or property as a result of the actions (and inactions) of Defendant.

51. California Civil Code section 1791.1(a) states in pertinent part, "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label.

52. California Civil Code section 1791.1(b) states in pertinent part "Implied warranty of fitness" means (1) that when the retailer, distributor, or manufacturer has reason to know any particular purpose for which the consumer goods are required, and further, that the buyer is relying on the

skill and judgment of the seller to select and furnish suitable goods, then there is an implied warranty that the goods shall be fit for such purpose and (2) that when there is a sale of an assistive device sold at retail in this state, then there is an implied warranty by the retailer that the device is specifically fit for the particular needs of the buyer.

53. California Civil Code section 1791.1(d) states in pertinent part "[a]ny buyer of consumer goods injured by a breach of the implied warranty of merchantability and where applicable by a breach of the implied warranty of fitness has the remedies provided in Chapter 6 (commencing with Section 2601) and Chapter 7 (commencing with Section 2701) of Division 2 of the Commercial Code, and, in any action brought under such provisions, Section 1794 of this chapter shall apply."

54. California Civil Code section 1792 states in pertinent part "[u]nless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable. The retail seller shall have a right of indemnity against the manufacturer in the amount of any liability under this section."

55. Defendant is, and at all relevant time was, a merchant engaged in the business of manufacturing and distributing, among other things, Chobani Greek Yogurt (i.e., the recalled Yogurt).

56. Plaintiff and class members purchased the recalled Yogurt.

57. Defendant, as the manufacturer, distributer, and seller of the recalled Yogurt warranted, both expressly and impliedly, as set forth more fully above, that the recalled Yogurt would, among other things, meet federal and state standards for human consumption, be consumable by humans under ordinary and expected usage, were free from defects, and were fit for their ordinary purpose.

58. Defendant breached the duty of implied warranty by selling the recalled Yogurt in a manner that did not conform to the promises or affirmations of fact made by Defendant, set forth above, including those made on the labeling and packaging because they were defective.

59. By virtue of the aforementioned acts of Defendant, Defendant has breached its implied warranty of merchantability for food. Defendant impliedly warranted that its Chobani Greek Yogurt (i.e., the recalled Yogurt) marketed and sold to consumers was of merchantable quality and would be consumable under ordinary and expected usage.

60. Plaintiff, on or about August 12, 2013, August 16, 2013, August 19, 2013, August 26, 2013 and September 4, 2013, purchased Chobani Greek Yogurt from Albertsons, which was manufactured by Defendant with a "Best By" date between September 11, 2013 and October 7, 2013.

61. At the time of Plaintiff's purchase of the Yogurt, Chobani, as previously mentioned, was and is in the business of selling "Greek Yogurt" to retail consumers and also held itself out as having special knowledge and skill regarding Greek yogurt.

62. Chobani Greek Yogurt, which falls within the manufacturing code of "16-012" with a "Best By" date between September 11, 2013 and October 7, 2013, is defective and unsafe, in that it was distributed to the public containing a harmful strain of mold. As a result, the Yogurt was not consumable as would be expected under ordinary and expected consumption, thus rendering the yogurt inconsumable, and in fact, dangerous to the health of Chobani's consumers. Some of which whom have allergies to specific types of mold.

63. The subject Yogurt was not of the same quality as those generally accepted in the yogurt trade.

64. The Yogurt was harmful to ones' health when consumed by Plaintiff and the

Class.

65. The subject Yogurt did not measure up to the promises and facts contained on the container/label in that the yogurt itself was not consumable, and contained an unidentified potentially dangerous mold.

66. The harmful condition (i.e., a harmful strain of mold) was not, and could not, have been reasonably expected by the average consumer to be found in Defendant's Yogurt.

67. As a direct and proximate result of the aforementioned acts of Defendant, Defendant has been unjustly enriched, in that Defendant sold harmful or potentially harmful product to Plaintiff and the Class.

68. As a direct and proximate result of the aforementioned acts of Defendant, Plaintiff and the Class members have all been harmed.

69. As a direct and proximate result of these misrepresentations, Plaintiff and class members have been damaged in an amount to be proven at trial. The damages suffered by Plaintiff and class members include, but are not limited to, the monies paid to Defendants for recalled Yogurt.

### SECOND CAUSE OF ACTION
### NEGLIGENCE

70. Plaintiff hereby re-alleges and incorporates the above allegations by reference as if set fully herein.

71. Plaintiff brings this cause of action on behalf of himself and on behalf of the Sub-Class. Plaintiff and the Sub-Class members have suffered injury in fact and lost money or property as a result of such negligence.

72. Defendant owed a duty of care to Plaintiff, individually, and to the Sub-Class he seeks to represent, such as the duty to use reasonable care in manufacturing and distributing of its Greek Yogurt that was free of a harmful or potentially harmful strain of mold, including the duty owed by California Civil Code § 1714(a).

73. Defendant breached its duty to Plaintiff and the Sub-Class by failing to take reasonable steps to identify and prevent harmful or potentially harmful mold from being introduced to, or growing within, its Greek Yogurt (i.e., the recalled Yogurt) before selling such product to consumers.

74. Had the Defendant exercised reasonable care and skill in the manufacturing and of its Greek Yogurt, Plaintiff and Sub-Class would not have purchased and/or ingested harmful or potentially harmful moldy yogurt.

75. The harmful or potentially harmful moldy yogurt manufactured, distributed and sold by Chobani, was a substantial factor in causing Plaintiff's and the Sub-Class members' harm.

76. Plaintiff and the Sub-Class have suffered damages, including, but not limited to, economic damages, according to proof at trial.

## VIII. PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself, and on behalf of the Class and Sub-Class, prays for judgment against Defendant as follows:

a) An order certifying the Class and Sub-Class as requested herein;

b) Restitution and disgorgement of all amounts obtained by Defendant as a result of its conduct alleged herein, together with interest thereon from the date of payment, to the victims of such violations;

c) Compensatory money damages according to proof;

d) Costs of this suit;

e) Reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and

f) For such other relief as this Court may deem just and proper.

///
///
///
///

## IX. JURY DEMAND

77. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: September 9, 2013              Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: __/s/ Abbas Kazerounian, Esq.__
    ABBAS KAZEROUNIAN
    ATTORNEY FOR PLAINTIFF